UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

OLEG SOLOUK, OLEXIY SOLOUK,
OREST YAKYMIV, VYACHESLAV                          14-CV-8954 (VEC)(DF)
MYKOLAVICH ZINCHENCO, LUKE
KOCH and ERIC LARSEN,

                                    Plaintiffs,

          - against -


EUROPEAN COPPER SPECIALTIES, INC.,
STALCO CONSTRUCTION, INC., ANTE
MARKOTA, KEVIN G. HARNEY, ALAN
NAHMIAS, JOSEPH SERPE, and Individuals
John Does 1-5,

                                    Defendants.

-------------------------------------------------------------------------X




STALCO DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT




FORCHELLI, CURTO, DEEGAN, SCHWARTZ,
MINEO & TERRANA, LLP
Attorneys for Defendants
Stalco Construction, Inc., Kevin G. Harney,
Alan Nahmias and Joseph Serpe
333 Earle Ovington Boulevard, Suite 1010
Uniondale, NY 11553
(516) 248-1700

**Table of Contents**

Page

PRELIMINARY STATEMENT ................................................................................1

INTRODUCTION ....................................................................................................1

SUMMARY OF ARGUMENTS................................................................................2

STATEMENT OF FACTS .......................................................................................4

ARGUMENT ..........................................................................................................7

POINT I

       PLAINTIFFS' FIRST CAUSE OF ACTION FOR
       BREACH OF THE STALCO/BPCA CONTRACT
       SHOULD BE DISMISSED ..............................................................7

       A. STALCO IS NOT LIABLE FOR ANY
          OF PLAINTIFFS' WAGES.............................................................7

       B. PLAINTIFFS ARE BOUND BY THE NUMBER
          OF HOURS THEY REPRESENTED IN THEIR
          TIMESHEETS AND PERSONAL CALENDAR .....................................10

       C. PLAINTIFFS' OFF-SITE WORK IS NOT
          COVERED BY LABOR LAW § 220 ................................................12

          i.  OUT-OF-STATE WORK IS NOT COVERED BY
              THE PREVAILING WAGE PROVISIONS OF THE
              STALCO/BPCA CONTRACT OR THE LABOR LAW ..................12

          ii.  OFF-SITE WORK IS GENERALLY NOT COVERED
               BY LABOR LAW § 220 ................................................13

       D. THERE IS NO PREVAILING WAGE FOR A FOREMAN ....................15

POINT II

       PLAINTIFFS' SECOND CAUSE OF ACTION FOR
       UNJUST ENRICHMENT SHOULD BE DISMISSED ..................................16

POINT III

    PLAINTIFFS' THIRD, FOURTH AND FIFTH CAUSES OF
    ACTION SHOULD BE DISMISSED BECAUSE THE STALCO
    DEFENDANTS WERE NOT PLAINTIFFS' "EMPLOYERS".......................17

    A. FORMAL CONTROL TEST .................................................19

        i.   HIRING AND FIRING OF EMPLOYEES.........................................19

        ii.  SUPERVISION AND CONTROL OF WORK
            SCHEDULES AND CONDITIONS OF EMPLOYMENT ................19

        iii. DETERMINING RATES AND METHOD OF PAYMENT..............21

        iv. EMPLOYMENT RECORDS .............................................................21

    B. FUNCTIONAL CONTROL TEST..........................................................22

        i.   PREMISES AND EQUIPMENT.......................................................22

        ii.  WHETHER DIRECT EMPLOYER'S
            BUSINESS SHIFTS AS A UNIT ......................................................22

        iii. WHETHER PLAINTIFFS HAVE
            DISCRETE LINE JOBS ...................................................................23

        iv. WHETHER SUBCONTRACTORS ARE
            FUNGIBLE........................................................................................23

        v.   SUPERVISION.................................................................................24

        vi. EXCLUSIVE OR PREDOMINANT WORK .....................................24

POINT IV

    PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES..................25

CONCLUSION.........................................................................................................26

## PRELIMINARY STATEMENT

Defendants, Stalco Construction, Inc. ("Stalco"), Kevin G. Harney, Alan Nahmias and
Joseph Serpe (collectively the "Individual Defendants" and, together with Stalco, the "Stalco
Defendants"), respectfully submit this Memorandum of Law in support of their motion for
summary judgment dismissing each of the claims asserted by Plaintiffs.

## Introduction

This case is about a few of those construction workers who were hired by a subcontractor
that eventually went bankrupt several years into the project and who claim that they were not
paid all wages to which they were entitled in connection with a construction project in
Manhattan on which Stalco was the general contractor.  Conveniently, these Plaintiffs now
claim, for the first time, to have worked more hours than are reflected in their timesheets,
including overtime hours at their employer's off-site shop in another state.  They make this claim
even though they had regularly filled out and submitted timesheets reflecting both their regular
hours and any overtime hours they worked, and also kept personal timesheets and calendars that
corroborate the hours on the official timesheets.  Those records flatly contradict their contrived
allegation that their employer would not allow them to record more than 40 hours per week in
their timesheets.

Moreover, any time spent working off-site and out-of-state does not entitle Plaintiffs to
be paid at "prevailing wage rates" under applicable state labor law.

Finally, Plaintiffs have sued not only their employer but also the general contractor and
its principals, hoping to find a "deep pocket" to collect on their specious claims, but Plaintiffs
have no valid claims against the general contractor or its principals, all of whom had little or no
contact with Plaintiffs and no control over their work.

### Summary of Arguments

Plaintiffs were employees of Defendant European Copper Specialists, Inc. ("ECS"), a subcontractor of Stalco's on a public improvement project in lower Manhattan, New York. They allege that ECS failed to pay them the applicable prevailing wages and overtime wages. ECS is in bankruptcy and so Plaintiffs seek to recover their allegedly unpaid wages from the Stalco Defendants, with whom they had no contractual relationship and little or no direct contact. Indeed, Stalco and ECS had nothing more than an arms-length, run-of-the-mill general contractor/subcontractor relationship, and it is undisputed that Stalco fully paid ECS all sums due and owing under the subcontract. There is no evidence that Stalco acted as anything but a typical general contractor, with no control over Plaintiffs or their work. To the extent that Plaintiffs are owed any money, it is only from their employer, ECS, not the Stalco Defendants.

Plaintiffs' first cause of action, which seeks prevailing wages under a third-party beneficiary breach of contract theory, should be dismissed because: (i) Plaintiffs are not third-party beneficiaries of Stalco's contract with the owner of the project, since they were not employed by Stalco; (ii) even if Plaintiffs were third-party beneficiaries, they are bound by the number of hours they recorded in their timesheets, which reflect the time worked on-site and at their employer's off-site shop in New Jersey; (iii) any hours worked at the off-site shop or any hours spent travelling were not covered by New York's prevailing wage law; and (iv) Plaintiffs have been fully and properly paid for their hours.

In fact, Plaintiffs' own personal time sheets and personal calendars (none of which were submitted to ECS) refute their allegations that they worked more hours than they were paid for. As such, Plaintiffs should be estopped from claiming to have worked more hours than they themselves previously recorded. Indeed, Plaintiffs admit that, other than their time sheets and

2

personal calendar, they have no way to know (or to prove) how many additional hours, if any, they worked on any particular day. Given the lack of any evidence to support Plaintiffs' claim, summary judgment should be granted in favor of the Stalco Defendants and Plaintiffs' claims should be limited to the hours reflected in their own documents.

Additionally, Plaintiff Oleg Solouk's "misclassification" claim within the first cause of action, which alleges that he should have been paid at a higher prevailing wage rate as a foreman carpenter rather than a journeyman carpenter, should be dismissed because there is no separate prevailing wage rate in New York for a "foreman" carpenter.

Plaintiffs' second cause of action, for prevailing wages under a theory of unjust enrichment, should be dismissed because the existence of express written contracts governing the subject matter of the dispute bars any quasi-contract claims, even though Plaintiffs are not parties to those contracts. Moreover, it is undisputed that Stalco has fully paid all sums due and owing to ECS and, thus, could not have been unjustly enriched.

Plaintiffs' third, fourth and fifth causes of action, which seek to hold the Stalco Defendants liable for unpaid overtime as "employers" under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL") and New Jersey Wage and Hour Law ("NJWHL"), respectively, fail because there is no evidence that the Stalco Defendants had any control over Plaintiffs or the terms and conditions of their employment. All of the factors identified by the Second Circuit weigh against a finding of "employer" liability against the Stalco Defendants. Furthermore, Plaintiffs' alleged overtime includes the hours they worked at jobs other than the single project with which Stalco was involved, i.e., the Pier A project in Manhattan. The Stalco Defendants could not possibly have been Plaintiffs' "employers" with respect to any of those other projects.

3

Finally, there is no basis for an award of attorneys' fees against the Stalco Defendants because the statutes on which the Plaintiffs rely do not apply here.

## STATEMENT OF FACTS

On or about September 23, 2010, Stalco, as general contractor, and the Battery Park City Authority d/b/a Hugh L. Carey Battery Park City Authority ("BPCA"), as owner, entered into an agreement (the "Stalco/BPCA Contract") for the public improvement project known as Pier A Phase III Restoration of Core & Shell General Construction Work in Manhattan (the "Pier A Project").

The Individual Defendants are officers of Stalco.

On or about May 2, 2011, Stalco entered into an agreement with ECS, as subcontractor, for ECS to furnish labor, fabrication, material, tools and equipment necessary to perform all Exterior Restoration work associated with the Project.

Plaintiffs were hired by and worked for ECS. (Complaint, ¶¶ 1, 33; Oleg Solouk Tr. at 26:9-27:3). The Stalco Defendants had no involvement in hiring the Plaintiffs and had no authority to fire them. (Affidavit of Kevin G. Harney ["Harney Aff."], ¶ 8). In fact, on or about April 16, 2013, ECS fired each of the Plaintiffs due to ECS' lack of work. (See Exhibit K).

Plaintiffs worked for ECS not only at the Pier A Project, but also at projects with which Stalco had no involvement, including projects in Newark, Oakland, Ewing and Jersey City, New Jersey, and Yonkers, Madison Avenue and Staten Island, New York, during that same period. (Complaint, ¶¶ 51, 75, 83). The Pier A Project is the only project involving Stalco for which Plaintiffs performed work. (Harney Aff., ¶ 10).

ECS solely determined Plaintiffs' labor classifications/rates and solely calculated and paid Plaintiffs' wages. (Complaint, ¶¶ 34, 37, 39, 52, 53, 56; Harney Aff., ¶ 11). As is typical of

4

a general contractor/subcontractor relationship, Stalco never directly paid Plaintiffs' wages but, instead, paid ECS pursuant to the subcontract and ECS paid its own employees, including Plaintiffs. (Harney Aff., ¶ 12).

The Stalco Defendants did not supervise Plaintiffs' work, had no involvement in Plaintiffs' work schedules, and did not maintain Plaintiffs' time sheets or other employment records. (Harney Aff., ¶ 13). Indeed, Plaintiffs admit that they had no direct conversations with anyone from Stalco during the course of the Pier A Project (Zinchenco Tr, at 33:17-21; Olexiy Solouk Tr. at 21:20–22:9), never saw anyone from Stalco at ECS' workshop in New Jersey (Larson Tr. at 128:25-129:3), took directions only from ECS' principal, Ante Markota ("Markota"), and Plaintiff Oleg Solouk, and not from Stalco (Yakymiv Tr. at 49:14-23, 50:23-51:3; Olexiy Solouk Tr. at 31:6-23), and directed their complaints about their hours and wages to Markota, not Stalco. (Zinchenco Tr. at 21:14-23:22, 33:22-25). Plaintiffs also admit that Markota  exclusively controlled their work schedules and conditions of employment, including directing Plaintiffs where and when to report to work in the morning; when to leave ECS' work shop in New Jersey to travel to the Pier A Project site; when to sign in and out each day; when to leave the job site to travel back to ECS' work shop; and how to fill out their time sheets. During the Pier A Project, ECS gave Plaintiffs blank time sheets to fill out (Complaint, ¶ 48) and allegedly instructed Plaintiffs regarding signing in and out each day and filling out their time sheets. (Complaint, ¶¶ 36, 48). Plaintiffs filled out and signed the time sheets, in which they acknowledged the hours they worked each day. The Stalco Defendants never discussed time sheets with Plaintiffs (Harney Aff., ¶ 16), nor do Plaintiffs so allege. Plaintiffs gave their signed time sheets to ECS only, and never to the Stalco Defendants. (Harney Aff., ¶ 17).

ECS prepared and executed certified payroll records setting forth the hours, trades and sums earned by the Plaintiffs and ECS' other workers at the Pier A Project. (See Exhibit M). It is the Stalco Defendants' understanding that ECS paid the Plaintiffs the sums due pursuant to the certified payroll records and that the certified payroll records correctly set forth the hours worked by Plaintiffs as set forth in their signed time sheets. (Harney Aff., ¶ 18). In fact, Stalco has learned through discovery that at least two of the Plaintiffs, Oleg Solouk and Olexiy Solouk, also maintained their own personal calendar in which they recorded, on a daily basis, the hours and locations worked each day. (See Exhibit N; Oleg Solouk Tr. at 31:8-36:3). ) In addition, Eric Larson maintained two sets of timesheets, the official ones that he submitted to ECS and a personal set that he kept (see Exhibit O). Both the Solouks' personal calendar and Larson's personal timesheets corroborate the information recorded by Plaintiffs in the time sheets submitted to ECS. They also refute Plaintiffs' allegation that they worked additional hours (off-site in New Jersey and/or traveling) that are not reflected on their timesheets. [1] .

By letter dated December 14, 2016, the Stalco Defendants sought an opinion from the New York State Department of Labor ("DOL"), inter alia, as to whether Plaintiffs' off-site work in New Jersey is covered by New York's prevailing wage law. (See Exhibit Q). In response, DOL issued an Opinion Letter, dated December 27, 2016, stating, in relevant part, that Plaintiffs' off-site work in New Jersey is not covered by New York's prevailing wage law. (See Exhibit R).

---

[1] Plaintiff Vyacheslav Zinchenco also testified that he maintained his own personal calendars in which he recorded the locations and hours that he worked, and made clear that he definitely had the calendars at his house and that he would produce them in discovery. (Zinchenco Tr. at 19:23-20:23, 24:11-20, 25:18-20). Mysteriously, however, Plaintiffs' counsel later claimed in an email dated November 7, 2016 that the calendars could not be located and thus would not be produced. (See Exhibit P). This last-minute "inability" to locate the calendar is highly suspicious, to say the least, and the Stalco Defendants should be afforded a negative inference against Plaintiffs.

## ARGUMENT

## POINT I

## PLAINTIFFS' FIRST CAUSE OF ACTION FOR BREACH OF THE STALCO/BPCA CONTRACT SHOULD BE DISMISSED

### A. Stalco Is Not Liable For Any Of Plaintiffs' Wages

Since Plaintiffs were not employed by Stalco and are not parties to Stalco's contract with BPCA, they did not sue Stalco under a direct breach of contract theory. Instead, Plaintiffs' first cause of action is based upon the misguided theory that they are third-party beneficiaries of the Stalco/BPCA Contract.

In a recent case squarely on point, the court rejected such a claim by employees of a subcontractor against the general contractors, holding that they were not intended third-party beneficiaries of the contract between the general contractors and the public authority because they were not employed by the general contractors. Barragan-Aquino v. East Port Excavation & Utilities Contractors, Inc., 2014 WL 1117269, *8 (E.D.N.Y. 2014).

The contract at issue in Barragan-Aquino, like the Stalco/BPCA Contract, contained the prevailing wage provisions mandated by Labor Law § 220, requiring the general contractors to comply, and to require their subcontractors to comply, with all applicable laws including the Labor Law, and providing that all workers, including those employed by any subcontractor of the general contractors, shall be paid prevailing wages. Id. The court rejected the claim, noting that "all cases finding employees to be third-party beneficiaries of prevailing wage provisions in public works contracts found by this Court . . . involved contracts between the contractor-employers of the plaintiffs, who had a duty to pay the plaintiffs' wages at prevailing wage rates, and a municipality or public agency. To the contrary, since the [general contractors] were not plaintiffs' employer, they had no duty to pay plaintiffs any wages, much less prevailing wage

7

rates." Id. (emphasis added).  The court cited, inter alia, Maldonado v. Olympia Mechanical Piping & Heating Corp., 8 A.D.3d 348, 350, 777 N.Y.S.2d 730 (2d Dep't 2004), which held that "[t]he workers protected by Labor Law § 220 are third-party beneficiaries of the contract *between their employer* and the municipality, and they possess a cause of action *against their employer* to recover damages for breach of contract when the contract *between the employer* and the municipality expressly provides for the wages to be paid to such workers . . ." (emphasis added).  Likewise, Stennett v. Moveway Transfer & Storage, Inc., 97 A.D.3d 655, 656-57, 949 N.Y.S.2d 91 (2d Dep't 2012), also cited in Barragan-Aquino, holds that "[i]n situations where the [Labor Law] requires the inclusion of a provision for payment of the prevailing wage in a labor contract between a public agency and a contractor, a contractual obligation is created *in favor of the contractor's employees*, and an employee covered by or subject to the contract, in his or her status as third-party beneficiary to the contract, possesses a common-law cause of action *against the contractor* to recover damages for breach of such a contractual obligation . . ." (emphasis added).  See also, Fata v. S.A. Healy Co., 289 N.Y. 401, 46 N.E.2d 339 (1943) (workers were entitled to bring third-party beneficiary claim against their *own employer* for failure to pay prevailing wages); Cox v. NAP Constr. Co., Inc., 10 N.Y.3d 592, 601, 861 N.Y.S.2d 238 (2008) (same); Johnson v. Carlo Lizza & Sons Paving, Inc., 160 F.Supp.3d 605 (S.D.N.Y. 2016) (same).

Since Stalco was not Plaintiffs' employer, it "had no duty to pay Plaintiffs any wages, much less prevailing wage rates."  Barragan-Aquino, 2014 WL 1117269, *8.  Therefore, Plaintiffs are not third-party beneficiaries of the Stalco/BPCA Contract and cannot recover any wages from Stalco.  Plaintiffs' claims, if any, are solely against their employer, ECS.

8

Based on prior discussions with counsel, we anticipate that Plaintiffs may attempt to cite to Sections 10.4(a) and 27.9(e) of the Stalco/BPCA Contract, but those sections also do not render Stalco liable to Plaintiffs for allegedly unpaid wages.

Section 10.4(a), which is not contained in the "Labor Provisions" of the contract but, instead, in the article generally dealing with "Subcontracts and Purchase Orders," provides that "Contractor shall be fully responsible for the work, acts and omissions of Subcontractors and Materialmen, and of persons either directly or indirectly employed by Subcontractors and Materialmen." It is clear that Section 10.4(a) has nothing to do with the payment of wages, but only with liability to BPCA for incomplete and defective work and materials. In fact, this is made even clearer by the immediately following subsection (10.4(b)), which provides that "Contractor's use of Subcontractors and Materialmen shall not diminish Contractor's obligation to complete the Work in accordance with the Contract Documents." "Under the canon of construction of *noscitur a sociis*, a word that is capable of many meanings 'is given more precise content by the neighboring words with which it is associated.'" Jones v. Sterling Infosystems, Inc., 317 F.R.D 404, 409 (S.D.N.Y. 2016) (Caproni, J.) (quoting United States v. Williams, 553 U.S. 285, 294, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)). Thus, the phrase "responsible for the work ... of Subcontractors...," particularly when viewed in the light of subsection (b), clearly refers only to liability to BPCA for incomplete/defective work, not to the payment of wages.

Section 27.9(e) of the Stalco/BPCA Contract provides that, "in case of underpayment of wages to any worker engaged in the Work by Contractor or any Subcontractor, Owner shall withhold from Contractor out of payments due an amount sufficient to pay such worker the difference between the wages actually paid such worker for the total number of hours worked, and that Owner may disburse such amount so withheld by Owner . . . to the employee to whom

such amount is due . . ." (emphasis added).   This section is irrelevant here because it does not impose any obligations on Stalco.  Instead, it requires the Owner, BPCA, to withhold payments under certain circumstances and permits the Owner to remit same to an underpaid worker.  Thus, even if Plaintiffs somehow were deemed to be third-party beneficiaries of this contract provision, their claim for a violation of same would be solely against BPCA, not Stalco.

Accordingly, Plaintiffs' first cause of action for breach of the Stalco/BPCA Contract should be dismissed.

### B. Plaintiffs Are Bound by the Number of Hours They Represented in Their Timesheets and Personal Calendar

Even if Plaintiffs could maintain a claim against Stalco for unpaid prevailing wages under the Stalco/BPCA Contract, Plaintiffs should not be able to seek to recover prevailing wages for additional hours they allegedly worked (off-site in New Jersey and/or traveling) that are not reflected on their timesheets.  Plaintiffs' claim of unpaid prevailing wages for additional, unrecorded hours worked fails because (1) their own time sheets and personal calendar actually show if and when they worked overtime and (2) their own time sheets and personal calendar confirms that their "official" timesheets are accurate.  Having filled out, signed and submitted their timesheets, on which ECS relied in paying their wages and preparing certified payroll records, and having admittedly maintained a contemporaneous personal calendar and second set of timesheets of their hours and locations worked each day, Plaintiffs should not be permitted to contradict the information in their own records.  Notably, all of the Plaintiffs (except Yakymiv and Zinchenco) traveled to and from work together in the same car each day and, thus, should be bound by the hours recorded in the personal calendar maintained by Oleg and Olexiy Solouk and the second set of timesheets kept by Eric Larson.

Moreover, Plaintiffs admit that, other than their timesheets and personal calendar, they have no way to know (or to prove) how many hours they worked on any particular day. (See Oleg Solouk Tr. at 30:19-22, 55:8-58:12). Thus, by their own admission, any testimony they would offer to contradict the time sheets and personal calendar would be wholly speculative and, thus, inadmissible.

Since Plaintiffs' own documents confirm the actual number of hours they worked (and for which they were paid) and they admittedly have no evidence to prove that they worked additional hours for which they were not paid, let alone the number of such hours, the Stalco Defendants are entitled to summary judgment dismissing the breach of contract claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53 (1986) ("Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"; movant is not required to submit evidence negating the opponent's claim); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252,106 S.Ct. 2505, 2512 (1986) ("If the defendant … moves for summary judgment … based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); Gallo v. Prudential Residential Services, Ltd., 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case … When no rational jury could find in

11

favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

### C. <u>Plaintiffs' Off-Site Work Is Not Covered By Labor Law § 220</u>

Even if Plaintiffs have a valid claim against Stalco for unpaid prevailing wages under the Stalco/BPCA Contract, Stalco would not be liable for the work allegedly performed by Plaintiffs at ECS' off-site shop in New Jersey (regardless of whether or not the off-site work is reflected in the timesheets), since such work is not subject to prevailing wages.

#### i.      Out-of-State Work is Not Covered by the Prevailing Wage Provisions of the Stalco/BPCA Contract or the Labor Law

The Stalco/BPCA Contract provides, in accordance with Labor Law 220(3), that "all applicable provisions of the Labor Law of the State of New York shall be carried out in the performance of the Work" (Stalco/BPCA Contract, § 27.9(a)) and that "the wages paid for a legal day's work shall be not less than the prevailing rate of wages as set forth in the currently scheduled rates for agencies of the City of New York . . ." (<u>Id</u>. at § 27.9(b)(2)).

Thus, Stalco only agreed to the applicability of <u>New York's</u> Labor Law, not the prevailing wage laws of New Jersey, where the off-site work allegedly was performed.

NYLL § 220, in turn, applies only to work performed in New York, not out-of-state work such as Plaintiffs' alleged off-site work in New Jersey. <u>See</u> <u>O'Neill v. Mermaid Touring Inc.</u>, 968 F.Supp.2d 572, 578-79 (S.D.N.Y. 2013) (NYLL does not apply to work performed outside New York because the statute contains no clear statement of the legislators' intent to extend its provisions extraterritorially); <u>Magnuson v. Newman</u>, 2013 WL 5380387, *4 (S.D.N.Y. 2013) (same); <u>Warman v. American National Standards Institute</u>, 2016 WL 3676681, *2 (S.D.N.Y. 2016) (same); 97 N.Y. Jur.2d Statutes § 225 ("Statutes have no extraterritorial effect, and thus are presumed and construed to apply only within the territorial jurisdiction of the state. An intent

to give a statute extraterritorial effect will not be inferred from general language used in it.")

(citing Ewen v. Thompson-Starrett Co., 208 N.Y. 245, 101 N.E. 894 (1913) (holding that quarry

work done for a subcontractor in Maine for a construction project located in New York was not

subject to prevailing wages under NYLL)).

As the Ewen Court aptly stated:

> If New York City wages had to be paid in the manufacture
> and preparation of all materials, no matter where the work
> might be done, the result upon the vast undertakings of a
> city like New York would be almost prohibitive.  If the act
> [New York Labor Law] is to be thus construed, it should
> have been entitled 'An act to discourage the undertaking of
> public works.'

Id. at 250.

The Ewen Court further noted that New York Labor Law "was not designed to increase

the wages paid to workmen in Maine . . ." Id. at 247-48.

Thus, since it is undisputed that Plaintiffs' alleged off-site work was done in New Jersey,

it is not subject to NYLL §220 or to the prevailing wage provisions in the Stalco/BPCA

Contract.

## ii.    Off-Site Work is Generally Not Covered by Labor Law § 220

Plaintiffs' prevailing wage claims for off-site work also fail because New York courts

have long held that "section 220, subdivision 3, of the Labor Law ... has no application to work

on materials entering into the construction of a Public Works project where such work was not

done at or about the site of the project and is not customarily and normally done at such site."

Garafano Const. Co. v. City of New York, 180 Misc. 539, 540, 43 N.Y.S.2d 26, 27 (App. Term

1st Dep't 1943) (citing Bohnen v. Metz, 126 A.D. 807, 111 N.Y.S. 196 (1st Dep't), aff'd on

opinion below 193 N.Y. 676, 87 N.E. 1115 (1908), and Ewen, 208 N.Y. 245, 101 N.E. 894); see

also, Ramaglia v. New York State Dep't of Transp., 5 A.D.3d 909, 911, 773 N.Y.S.2d 167, 168-

69 (3d Dep't 2004) (Labor Law § 220(3) did not apply to off-site painting of structural steel; "while it may previously have been customary to paint new steel on site, the record indicates that it is now customary to use shop-painted steel to create a better finished product, to avoid traffic disruption, and for environmental reasons").

The mere fact that work <u>can</u> be done on-site does not mean that the work is "customarily and normally" done on-site.

In <u>Ewen</u>, the Court held that off-site work of quarrying, cutting, dressing, trimming and altering granite used at the project was not subject to prevailing wages. <u>Ewen</u>, 208 N.Y. 245.

Similarly, in <u>Bohnen</u>, the court held that employees who performed off-site manufacture of custom doors, windows and other woodwork used at the project were not entitled to prevailing wages. <u>Bohnen</u>, 126 A.D. at 809. The court reasoned that to apply the prevailing wage law to such off-site work "would follow the iron beams necessary for a building to the mines, the woodwork to the logging camp, and the stone to the quarry, and would put a contractor to the hazard of forfeiture of his contract and all payments due him in the purchase of any material for the construction of any municipal building." <u>Id</u>.

The New York State Department of Labor, Bureau of Public Work ("DOL"), is charged with enforcement of New York's prevailing wage laws. Labor Law § 220(3-a)(a(i)) provides in relevant part that "it shall be the duty of the fiscal officer to make a proper classification of such workers, mechanics and laborers [on a public work project] taking into account whether the work is heavy highway, building, sewer and water, tunnel work or residential and to make a determination of the schedule of wages and supplements to be paid or provided."

The Labor Law further provides that "[t]he fiscal officer … shall on a verified complaint in writing of any person interested …, and may on his own initiative cause a compliance

investigation to be made to determine whether the contractor or a subcontractor has paid the prevailing rate of wages ..." Labor Law § 220(7).

When determining whether off-site work is subject to prevailing wages, the DOL also examines whether the off-site facility is "designated" in the contract for work that is customarily and normally done at the project site, and whether it is a "dedicated" site that has been set up for the specific project at issue. (See Exhibit T, printout of DOL website, entitled, "Article 8 (Construction): Frequently Asked Questions," at 2).

As the DOL has confirmed in its December 27, 2016 Opinion Letter, Plaintiffs' off-site work is not covered by Labor Law § 220 because ECS' off-site facility is neither a designated nor dedicated site for this Project and the off-site work "appears to be in balance with the employer's normal operation and did not deter the work that was customarily and normally done on the project site." (See Exhibit R).

Indeed, there is no evidence to support an argument that Plaintiffs' off-site work is customarily and normally done at the project site, or that ECS' off-site shop was designated in ECS' contract or was set up solely for this specific Project. On the contrary, Plaintiffs have testified that they performed the same types of off-site work at ECS's off-site shop in connection with other projects they worked on for ECS as well. (See Koch Tr. at 17:11-18:14). Accordingly, Plaintiffs are not entitled to prevailing wages for their off-site work.

**D.  There is No Prevailing Wage for a Foreman**

Equally without merit is the portion of the first cause of action which claims that Oleg Solouk was entitled to be paid as a carpenter foreman rather than as a journeyman carpenter. This claim fails, as a matter of law, because there is no prevailing wage rate in New York for a

foreman or any similar supervisory employee.  See Exhibit S (Wage Rate Schedule for carpenter, which contains no foreman rate).

## POINT II

### PLAINTIFFS' SECOND CAUSE OF ACTION
### FOR UNJUST ENRICHMENT SHOULD BE DISMISSED

Plaintiffs' second cause of action seeks to recover, under an unjust enrichment theory, the same prevailing wages that are sought in the first cause of action.

This claim should be dismissed because "an unjust enrichment claim is barred 'if there is a valid contract governing the subject matter of the dispute, even if one of the parties to the claim is not a party to that contract.'" Mueller v. Michael Janssen Gallery Pte. Ltd., 225 F.Supp.3d 201, 207 (S.D.N.Y. 2016) (emphasis in original) (quoting Vista Food Exch., Inc. v. Champion Foodservice, LLC, 124 F.Supp.3d 301, 312 (S.D.N.Y. 2015)) ; see also, Maor v. Blu Sand Int'l Inc., 143 A.D.3d 579, 38 N.Y.S.3d 907, 908 (1st Dep't 2016) (barring unjust enrichment claim because "there can be no quasi-contract claim against a third-party nonsignatory to a contract that covers the subject matter of the claim"); Hildene Capital Mgt., LLC v. Friedman, Billings, Ramsey Grp., Inc., No. 11 CIV. 5832 (AJN), 2012 WL 3542196, at *10 (S.D.N.Y. Aug. 15, 2012); Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F.Supp.2d 162, 202–03 (S.D.N.Y. 2011); Randall's Is. Aquatic Leisure, LLC v City of N.Y., 92 A.D.3d 463, 464, 938 N.Y.S.2d 62, 63 (1st Dep't 2012);; Bellino Schwartz Padob Advertising, Inc. v. Solaris Marketing Group, Inc., 222 A.D.2d 313, 313, 635 N.Y.S.2d 587 (1st Dep't 1995) .

It is undisputed that the subject matter of Plaintiffs' claims – the Pier A Project and the parties' rights and obligations with respect to same – is governed by express contracts between Stalco and BPCA and between Stalco and ECS.  Therefore, Plaintiffs' unjust enrichment claim is barred and should be dismissed.

Moreover, Stalco has not been unjustly enriched because it is undisputed that Stalco has fully paid all sums due and owing to ECS under the subcontract. Thus, Stalco has not received anything that, in equity and good conscience, it should not be permitted to retain. See Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465, 471 (2011).

### POINT III

### PLAINTIFFS' THIRD, FOURTH AND FIFTH CAUSES OF ACTION SHOULD BE DISMISSED BECAUSE THE STALCO DEFENDANTS WERE NOT PLAINTIFFS' "EMPLOYERS"

Plaintiffs' third, fourth and fifth causes of action seek to recover from the Stalco Defendants overtime wages that ECS allegedly failed to pay them under the FLSA, NYLL and NJWHL. In order to find any of the Stalco Defendants liable for ECS' alleged failure to pay Plaintiffs overtime wages, "the Court must conclude that they were 'employers' within the meaning of" the FLSA, NYLL and NJWHL. Karic. Major Automotive Companies Inc., 992 F.Supp.2d 196, 203 (E.D.N.Y. 2014); 29 U.S.C. § 207(a)(1); 12 NYCRR 142-2.2; N.J.S.A. 34:11-56a4.

The FLSA defines "employer," in pertinent part, as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The definitions of "employer" in NYLL and NJWHL are nearly identical to that under the FLSA. (see NYLL § 190(3); N.J.S.A. 34:11-56a1) and courts apply the same analysis under the three statutes to determine whether a defendant is an "employer." See Vasto v. Credico (USA) LLC, 2016 WL 4147241 (S.D.N.Y. 2016); Olvera v. Bareburger Group LLC, 73 F.Supp.3d 201, 206 (S.D.N.Y. 2014); Shakib v. Back Bay Rest. Grp., Inc., 2011 WL 4594654 (D. N.J. 2011).

17

"The definition of 'employer' turns on 'whether the person or entity possessed the power to control the workers in question … When it comes to 'employer' status under the FLSA, control is key." Ocampo v. 455 Hospitality LLC, 2016 WL 4926204, *5 (S.D.N.Y. 2016).

"[T]he Second Circuit has articulated two tests to determine whether an employment relationship existed for the purposes of the FLSA. The first, the formal control test, asks 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Ocampo, 2016 WL 4926204, *6 (quoting Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 422 (2d Cir. 2016)).

"Additionally, the Second Circuit has identified a number of factors pertinent to determining whether a person or entity, even if lacking formal control, exercised 'functional control' over an employee. Ocampo, 2016 WL 4926204 at *6 (citing Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 72 (2d Cir. 2003)). "Under this functional control test, courts look to the following relevant, though not exclusive, factors: '(1) whether the alleged employers' premises and equipment were used for the plaintiffs' work; (2) whether the subcontractors had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which [the] plaintiffs performed a discrete line job that was integral to the alleged employers' process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the alleged employers or their agents supervised [the] plaintiffs' work; and (6) whether [the] plaintiffs worked exclusively or predominantly for the alleged employers.'" Ocampo, 2016 WL 4926204, *6 (quoting Zheng, 355 F.3d at 72).

18

In the seminal case concerning the issue of "employer" status in the construction industry, Ovadia v. Office of Indus. Bd. of Appeals, 19 N.Y.3d 138, 143, 946 N.Y.S.2d 86, 89 (2012), the New York Court of Appeals held that, despite the "seemingly broad definitions" of "employer," "employee" and "employed" in NYLL, "in the typical general contractor/subcontractor context, a general contractor is not an employer of its subcontractors' employees." The Court (at Id.) reasoned as follows :

> As a practical matter, general contractors in the construction industry do not hire or supervise the workers employed by their subcontractors; they do not usually maintain the employment records for each worker or track the individual workers' schedules or rates of pay. The primary objective of a general contractor is to keep the project on schedule and to coordinate the work among subcontractors in order to avoid costly delays in the completion of the project. Thus, general contractors frequently interact with the principals and supervisors of the subcontractors and generally have no direct control or functional supervision over the employees performing work for the subcontractors.

None of the factors examined by the courts supports a finding that any of the Stalco Defendants were Plaintiffs' "employer."

**A.  Formal Control Test**

**i.      Hiring and Firing of Employees**

The Stalco Defendants did not have the power to hire or fire the Plaintiffs. (Harney Aff., ¶ 8). That power belonged exclusively to ECS. (Id.). In fact, Plaintiffs admit that they were hired by ECS, not Stalco.  (See Complaint, ¶ 1).

**ii.     Supervision and Control of Work Schedules
And Conditions of Employment**

The Second Circuit cautioned in Zheng that "the degree to which the defendants supervise the plaintiffs' work" should not be "misinterpreted to encompass run-of-the-mill

subcontracting relationships." Zheng, 355 F.3d at 74. This factor "weighs in favor of joint employment *only if* it demonstrates effective control of the terms and conditions of the plaintiff's employment … By contrast, supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement." Id. at 75. Thus, the inquiry is whether the defendant "controls the day-to-day manner" in which the plaintiffs perform their work. Jean-Louis v. Metropolitan Cable Communications, Inc., 838 F.Supp.2d 111, 127 (S.D.N.Y. 2011).

There is no evidence that the Stalco Defendants supervised Plaintiffs' work. In fact, Plaintiffs admit that they took direction from Plaintiff Oleg Solouk and ECS' principal, Markota. (See Yakymiv Tr. at 49:14-23, 50:23-51:3; Olexiy Solouk Tr. at 31:6-23). Plaintiffs also admit that they had no direct communications with anyone from Stalco. (See Zinchenco Tr, at 33:17-21; Olexiy Solouk Tr. at 21:20–22:9). The Stalco Defendants also unequivocally state that they did not supervise Plaintiffs' work and that all such supervision was performed by ECS. (See Harney Aff., ¶ 13).

The Complaint also confirms that Markota exclusively controlled Plaintiffs' work schedules and conditions of employment, including directing Plaintiffs where and when to report to work in the morning; when to leave ECS' work shop in New Jersey to travel to the Pier A Project site; when to sign in and out each day; when to leave the job site to travel back to ECS' work shop; and how to fill out their time sheets. See Complaint, ¶¶ 45, 46, 48, 49; see also, Yakymiv Tr. at 50:14-23 (testifying that he took direction from Plaintiff Oleg Solouk and Markota). Plaintiffs further allege that ECS and Markota "fixed" their time sheets and told them that "if they didn't like it, they could leave" or words to that effect. (Complaint, ¶ 49). In fact,

Plaintiffs admit that they had no direct conversations with anyone from Stalco. (See  Zinchenco

Tr. at 33:17-21; Olexiy Solouk Tr. at 21:20–22:9).[2]  See Jean-Louis, 838 F.Supp.2d at

126 (holding that the second formal control factor did not support joint employer liability

because defendant did not assign plaintiffs' work schedules).

### iii.    Determining Rates and Method of Payment

As noted above, ECS solely determined Plaintiffs' labor classifications/rates and

calculated and paid Plaintiffs' wages.  (Complaint, ¶¶ 34, 37, 39, 52, 53, 56; Harney Aff., ¶ 11).

### iv.    Employment Records

The Stalco Defendants did not maintain any of Plaintiffs' employment records, such as

personnel files, time sheets, pay stubs or government employment forms. (See Harney Aff., ¶

13).

Plaintiffs allege that they received blank time sheets from ECS to fill out, were instructed

by ECS how to fill them out, and submitted the completed and signed time sheets to ECS.

(Complaint, ¶¶ 36, 48).  The Stalco Defendants did not verify the number of hours Plaintiffs

worked and did not sign off on their time sheets.  (See Harney Aff., ¶ 17).  Further, ECS

prepared and submitted certified payroll records based on Plaintiffs' time sheets, and paid

Plaintiffs directly for their work.  See Jean-Louis, 838 F.Supp.2d at 130 (the fourth "formal

control" factor did not support a finding that contractor was joint employer of subcontractor's

employees, where contractor did not maintain personnel files, time sheets, pay stubs or

government employment forms, did not maintain "employment records on the matter most

---

[2] The only direct communications Plaintiffs allege to have had with Stalco was in the final month of the three-year Pier A Project, in which they state that (i) Plaintiffs advised Stalco of the wage amounts they believe were owed by ECS (Complaint, ¶¶ 39-40), and (ii) Stalco agreed to, and did, advance money to ECS in order for ECS to pay Plaintiffs those wages (Complaint, ¶¶ 36-37).

relevant to overtime obligations under the FLSA: the *hours* worked" by the plaintiffs, did not sign off on time sheets or verify the number of hours worked by each plaintiff).

Thus, the "formal control" test does not support a finding that any of the Stalco Defendants were Plaintiffs' "employer" under the relevant statutes.

### B. Functional Control Test

#### i. Premises and Equipment

It is undisputed that Plaintiffs did not use Stalco's premises or equipment for their work and, in fact, never visited Stalco's premises for any reason (except once at the end of the project to complain that ECS had not fully paid all of their wages). (See Harney Aff., ¶ 19).

Plaintiffs allege that they picked up their equipment each morning from *ECS' workshop* in New Jersey. (Complaint, ¶ 45). Plaintiffs further allege that all of their work was performed at BPCA's Pier A job site and at ECS' workshop, neither of which premises belonged to Stalco. See Jean-Louis, 838 F.Supp.2d at 132 (the fact that technicians performed their work at the homes of the putative joint employer's customers did not support a finding of joint employer liability, because "a home belongs to the customer, not Time Warner [the putative joint employer]").

#### ii. Whether Direct Employer's Business Shifts as a Unit

The second Zheng factor examines whether the subcontractor/direct employer "seeks business from a variety of contractors" or "serves a single client." Zheng, 355 F.3d at 72. "This factor 'is relevant because a subcontractor that seeks business from a variety of contractors is less likely to be part of a subterfuge arrangement than a subcontractor that serves a single client.'" Jean-Louis, 838 F.Supp.2d at 132 (quoting Zheng, 355 F.3d at 72).

It is undisputed that Plaintiffs' employer, ECS, seeks business from a variety of contractors and owners, as Plaintiffs allege that, while working for ECS, they also worked at a number of projects other than the Pier A Project. (See Complaint, ¶¶ 51, 75, 83). ECS performed those projects for contractors and owners *other than Stalco*. (See Harney Aff., ¶¶ 9-10). Moreover, "Plaintiff[s] do[] not allege anywhere in [their] complaint that [ECS] could not shift its business to another purported joint employer." Hugee v. SJC Group, Inc., 2013 WL 4399226, *8 (S.D.N.Y. Aug. 14, 2013); see also, Jean-Louis, 838 F.Supp.2d at 132-33 (holding that the second *Zheng* factor weighed against finding of joint employment, where direct employer had provided installation services for other companies in the past and "can seek work from any other cable company at any time").

### iii.   **Whether Plaintiffs Have Discrete Line Jobs**

This factor generally applies to "readily outsourced manufacturing work" that is performed on a production line, requires "minimal training or equipment" and is "performed on a predictable schedule." See Barfield v. New York City Health & Hospitals Corp., 537 F.3d 132, 146 (2d Cir. 2008); Zheng, 355 F.3d at 73. Plaintiffs' construction services do not have any of these characteristics and thus cannot be considered "discrete line jobs." See Huggee, 2013 WL 4399226, *9 ("As a security guard, Plaintiff was a service provider and did not perform a discrete line job.").

Accordingly, this factor weighs against a finding of "employer" liability.

### iv.   **Whether Subcontractors are Fungible**

The fourth *Zheng* factor – whether responsibility under the contracts could pass from one subcontractor to another without material changes – refers to whether "the *same* employees would continue to do the *same* work in the *same* place" if the direct employer abandoned his

position and another employer took his place. Zheng, 355 F.3d at 74 (emphasis in original). "Where … employees work for an entity (the purported joint employer) only to the extent that their direct employer is hired by that entity, this factor does not in any way support the determination that a joint employment relationship exists." Id.

The Second Circuit in Zheng expressly rejected the holding in Lopez v. Silverman, 14 F.Supp.2d 405, 422 (S.D.N.Y. 1998), "that this factor weighs in favor of joint employment when a general contractor uses numerous subcontractors who compete for work and have *different* employees." Zheng, 355 F.3d at 74 n. 11. The Second Circuit reasoned that "if this view were adopted, factor (4) would classify nearly all subcontracting relationships as joint employment relationships—a result that finds no support either in the law or in our country's commercial practices." Id. at 74.

Here, the fourth factor weighs against joint employment because there is no evidence that Plaintiffs (or any of the other ECS employees) are tied to Stalco rather than to ECS. Moreover, when ECS was terminated from the Project by Stalco, Stalco did not hire ECS' employees directly or indirectly to finish ECS' work. (See Harney Aff., ¶ 20). On the contrary, ECS' employees work on a Stalco project only to the extent that ECS is hired by Stalco. (See Harney Aff., ¶ 20).

### v.   **Supervision**

As discussed above (see Point III(A)(ii), supra), the Stalco Defendants did not supervise Plaintiffs' work.

### vi.   **Exclusive or Predominant Work**

The Second Circuit emphasized in Zheng that under the sixth factor – whether the purported joint employees worked *exclusively or predominantly* for the putative joint employer –

"where a subcontractor performs *merely a majority* of its work for a single customer, there is no sound basis on which to infer that the customer has assumed the prerogatives of an employer." Zheng, 355 F.3d at 75 (emphasis added).

Here, Plaintiffs admit that they "provided labor for ECS on projects other than Pier A." (Complaint, ¶¶ 51). Stalco had no involvement with any of those other projects. (Harney Aff., ¶¶ 9-10). Thus, Plaintiffs did not work "exclusively or predominantly" on a Stalco project. Therefore, this factor also weighs against a finding of joint employer liability.

It is clear that no evidence exists to support Plaintiffs' conclusory allegation that the Stalco Defendants were their "employer" under the relevant statutes. All of the factors recognized by the Second Circuit weigh heavily *against* a finding of "employer" liability on the part of the Stalco Defendants. This lawsuit is nothing more than a misguided attempt to extract payment from the Stalco Defendants because Plaintiffs' actual employer, ECS, is in bankruptcy. Accordingly, summary judgment should be granted dismissing the complaint in its entirety.

## POINT IV

## **PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES**

The Complaint seeks an award of attorneys' under the FLSA, NYLL and NJWHL. (Complaint, ¶¶ 72, 80, 86). However, as discussed above, the Stalco Defendants have no liability to Plaintiffs under those statutes because they were not Plaintiffs' "employer."

Therefore, Plaintiffs have no right to collect attorneys' fees against the Stalco Defendants under those statutes.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant summary judgment dismissing the Complaint as against the Stalco Defendants, together with such other and further relief as the Court deems just and proper.

Dated: Uniondale, New York
      December 20, 2017

                                  Joseph P. Asselta, Esq.
                                  FORCHELLI, CURTO, DEEGAN,
                                  SCHWARTZ, MINEO & TERRANA, LLP
                                  Attorneys for Defendants
                                  Stalco Construction, Inc., Kevin G. Harney,
                                  Alan Nahmias and Joseph Serpe
                                  333 Earle Ovington Boulevard, Suite 1010
                                  Uniondale, NY 11553
                                  (516) 248-1700